UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL JEFFREY ARNOLD,

      Petitioner,

                          CASE NO. 2:13-CV-13253

v.                           JUDGE DAVID M. LAWSON
                                MAGISTRATE JUDGE PAUL J. KOMIVES

JEFFREY LARSON,

      Respondent.

_____/


**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    *Judicial Bias* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               a. Failure to Investigate, Move for Forensic Evaluation, and Move to Suppress . . . . . 20
               b. Failure to Discuss Plea Offer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
               c. Failure to Move for Disqualification . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
               d. Misadvice Regarding Sentence and Availability of No-Contest Plea . . . . . . . . . . 24
               e. Failure to Object to Sentencing Guidelines and Presentence Report . . . . . . . . . . 25
     F.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 26
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
     G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should grant petitioner a certificate of appealability with respect to his judicial bias claim, and deny a certificate of appealability with respect to petitioner's ineffective assistance of counsel claims.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Michael Jeffrey Arnold is a state prisoner, currently confined at the Central Michigan Correctional Facility in St. Louis, Michigan.

2.      On December 2, 2010, petitioner was convicted of four counts of breaking and entering with intent to steal, MICH. COMP. LAWS § 750.110, pursuant to his guilty plea in the Tuscola County Circuit Court.  On January 24, 2011, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to four concurrent terms of 7-25 years' imprisonment.

3.      Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

I.      DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE THE STATUTORY SENTENCING GUIDELINES WERE MISSCORED AS TO THE OFFENSE VARIABLES, WHICH AFFECTED THE STATUTORY SENTENCING GUIDELINE RANGE.

II.     DEFENDANT'S PLEA AND SENTENCE SHOULD BE SET ASIDE WHERE DEFENDANT WAS DENIED DUE PROCESS THROUGH THE INEFFECTIVE ASSISTANCE OF COUNSEL AND A BIASED JUDGE.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented."  *People v. Arnold*, No. 308201 (Mich. Ct. App. Apr. 12, 2012).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court (with the judicial bias and ineffective assistance claims separated into two claims).  The Supreme Court

2

denied petitioner's application for leave to appeal in a standard order. *See People v. Arnold*, 492 Mich. 858, 817 N.W.2d 99 (2012).

     5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 30, 2013. As grounds for the writ of habeas corpus, he raises his judicial bias and ineffective assistance of counsel claims.

     6.     Respondent filed his answer on February 4, 2014. He contends that petitioner's claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

     Petitioner's convictions stem from a string of break-ins of businesses in Tuscola County. As a result of his activities, petitioner was charged with 13 separate counts. Petitioner's case was assigned to Judge Patrick R. Joslyn. On December 2, 2010, petitioner entered a guilty plea pursuant to a plea agreement. Under the terms of the agreement, petitioner would plead guilty to four counts of breaking and entering with intent to steal, in exchange for dismissal of the remaining charges. The parties agreed to a cap of seven years on the minimum term of imprisonment, and to a cap of 25 years on the maximum term of imprisonment. *See* Plea Tr., at 3-5. Petitioner signed a waiver of rights form, and affirmed that he understood his rights and was freely and voluntarily waiving those rights. *See id.* at 6-7. The court explained to petitioner that the potential maximum term of imprisonment on each of the counts to which he was pleading guilty was 10 years' imprisonment, elevated to a potential of life imprisonment based on his habitual offender status. Petitioner indicated that he understood the potential maximum sentences. *See id.* at 10. Petitioner denied that any one had coerced or threatened him, told him what the actual sentence of the court would be, or made any promises to him other than those reflected in the plea agreement. *See id.* at 11. After

3

establishing a factual basis for the plea, *see id.* at 13-17, the court accepted petitioner's plea. *See id.* at 17-18.

Petitioner appeared for sentencing on January 24, 2011. At that time, the trial judge, Patrick Joslyn, addressed petitioner's claim that he was biased against petitioner:

> Well, a couple of things I think should be said. Number one, the defendant views this Court and this judge as somehow being prejudiced against him. I bear no prejudice whatsoever towards Mr. Arnold other than what may be perceived to be prejudice that is rationally based. That is, Mr. Arnold doesn't have to receive the services of this Court if he avoids coming to court and committing crimes. The only knowledge I have or the only association I have with Mr. Arnold is a defendant that has appeared before this Court and has entered pleas to crimes and I have sentenced him for those crimes. He makes a lot of allegations that are totally unfounded, unsupported and are poppycock as far as I'm concerned.

Sentence Tr., at 14. The court then sentenced petitioner to concurrent terms of 7-25 years' imprisonment, in accordance with the plea agreement. The court also included, at petitioner's request, recommendations to the Michigan Department of Corrections that petitioner not be paroled to Tuscola County, be given a psychiatric evaluation, and be served kosher meals. *See id.* at 15. Petitioner subsequently filed a motion for disqualification and to set aside his plea. Because Judge Joslyn had retired, this motion was heard by Judge Michael J. Matuzak, who found the motion for disqualification moot in light of Judge Joslyn's retirement. He also found that petitioner's allegations regarding Judge Joslyn provided no basis for setting aside the plea. *See* Mot. for Disqualification Tr., dated 2/13/12, at 3-4.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

4

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

5

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131

6

S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

The deferential standard of review set forth in § 2254(d) applies even though the Michigan Court of Appeals did not issue a reasoned decision. As the Supreme Court has explained, an unexplained summary order by a state court is presumed to be a rejection of the claims on the merits, and the petitioner bears the burden of demonstrating that the rejection was on some basis other than the merits. *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). Here, there is no indication that the Michigan Court of Appeals denied petitioner's applications for leave to appeal on any basis other than the merits. On the contrary, the court of appeals explicitly stated that its denials were "for lack of merit in the grounds presented," and the Michigan Court of Appeals has repeatedly held a denial on this basis is "a determination on the merits of the case." *Attorney Gen'l ex rel. Dep't of Treasury v. Great Lakes Real Estate Investment Trust*, 77 Mich. App. 1, 3, 257 N.W.2d 248, 249 (1977); *accord Hoye v. DMC/WSU*, No. 285780, 2010 WL 334833, at *1 (Mich. Ct. App. Jan. 28,

2010) (per curiam); *McCabe v. Miller & Assocs., L.L.P.*, No. 275498, 2007 WL 2935032, at *3 (Mich. Ct. App. Oct. 9, 2007) (per curiam); *People v. Douglas*, 122 Mich. App. 526, 530, 332 N.W.2d 521, 523 (1983). Accordingly, the Michigan Court of Appeals's denial of petitioner's application for leave to appeal "for lack of merit in the grounds presented" constitutes an adjudication on the merits for purposes of § 2254(d). *See Snyder v. Lafler*, No. 09-13773, 2011 WL 309056, at *3 (E.D. Mich. Jan. 27, 2011) (Roberts, J.).

D.     *Judicial Bias*

Petitioner first contends that Judge Joslyn was biased against him. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29. Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter,

habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner.  *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias."  *Id*. (internal quotation omitted).  The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id*. (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties.  *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).  As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988).  For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555.  Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id*. at 556.  Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias.  *See Maurino*, 210 F.3d at 645; *Poland v.*

9

*Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

      2.    *Analysis*

For the most part, petitioner's allegations of bias are based on Judge Joslyn's judicial rulings in prior cases. In his affidavit, petitioner details numerous instances in which he contends Judge Joslyn deprived him of his rights or issued erroneous rulings. *See* Pet., Ex. D, Aff. of Jeffrey Arnold, ¶¶ 5-24 [hereinafter "Pet'r's Aff."]. These judicial rulings, even if erroneous, do not demonstrate that Judge Joslyn was biased against petitioner. As noted above, to require recusal, "the judge's prejudice or bias must be personal or extrajudicial." *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005) (citing *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999)). "'Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases.'" *Id.* (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003). The bulk of petitioner's allegations fail to establish personal bias on the part of Judge Joslyn.

Petitioner does contend that Judge Joslyn was personally biased against him because Judge Joslyn was antisemitic. In support of this allegation, petitioner relies on two pieces of evidence. First, he relies on his own affidavit, in which he claims that in a bench conference with defense counsel and the prosecutor in a prior case, Judge Joslyn stated (referring to petitioner): "He's not one of us, he's a 'kike'. I'm going to show this Jewboy who's boss." Pet'r's Aff., ¶ 5. Second, he points to a statement made by Judge Joslyn in a documentary movie in which Judge Joslyn asserted that there are "a lot of Jews running the media." *Id.*, ¶ 2; Pet., Ex. E (*Variety* magazine review of

the film "Without My Daughter").[1]  With respect to the former statements, petitioner has presented

nothing apart from his own affidavit to support his allegations that Judge Joslyn called him a "kike"

and "Jewboy" in a prior proceeding.  Petitioner has pointed to no state court transcript reflecting

these remarks, even though according to petitioner they occurred in open court.  Nor has he

presented an affidavit from the prosecuting attorney or his defense counsel in the prior proceeding,

who were witnesses to the judge's alleged remarks.  A habeas petitioner's unsupported "self-serving

affidavit must be viewed with great skepticism." *Freeman v. Trombley*, 483 Fed. Appx. 51, 58 (6th

Cir. 2012); *Snyder v. Grayson*, 872 F. Supp. 416, 420 (E.D. Mich. 1994) (Gadola, J.) ("[I]t is well

established that a self-serving habeas affidavit is not sufficient to establish a constitutional

violation").  Thus where, as here, there exists other witnesses or evidence that could corroborate a

petitioner's claim, his failure to present this evidence is fatal to his claim.  *See United States v.

Merrill*, 340 Fed. Appx. 976, 978 (5th Cir. 2009) (petitioner not entitled to relief based on his own

affidavit of alleged undisclosed promise in connection with guilty plea where petitioner did not

provide "affidavits from reliable third parties establishing the terms of the alleged promise, the time

and place of the promise, or the identity of any eyewitnesses to the promise."); *Smith v. Winters*, 337

F.3d 935, 937-38 (7th Cir. 2003) (petitioner not entitled to habeas relief based on claim in his own

---

[1]Judge Joslyn was the presiding judge at the divorce and child custody hearings involving Betty
Mahmoody, made famous in her book *Not Without My Daughter* and the subsequent movie adaptation
of the book starring Sally Field.  "Without My Daughter" is a Finnish documentary chronicling Sayed
Mahmoody's side of the story.  In the *Variety* magazine article reviewing the film relied upon by
petitioner, the reviewer writes:

> It's definitely worth waiting for the late-on scene in which Michigan judge
> Patrick Reed Joslyn, who officiated at the divorce and child custody hearings, holds
> forth in a classic, unguarded moment that documakers must dream of.  "I was in the
> military," says the judge.  "If I were in charge of the country, there'd be a lot of dead
> Iranians."  He adds, "Maybe it's fashioned by our own media, because we do have a lot
> of Jews running the media.  Are we still rolling?"

Pet., Ex. E.

affidavit that prosecutor committed misconduct by drawing swastikas and displaying them to the jury; petitioner "should long ago have sought supporting affidavits from his trial counsel, the trial judge, and the jurors. His failure to do so, when coupled with the fact that the trial transcript provides no support for his allegations, is strongly suggestive of fabrication."); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (petitioner's self-serving affidavit with no affidavits from the purported witnesses was insufficient to establish ineffective assistance of counsel based on counsel's failure to call witnesses); *United States v. Sayre*, No. CR 05-00198, 2013 WL 3872172, at *9 (C.D. Cal. Apr. 30, 2013) ("Without such corroborating evidence, the losing litigant in any trial could always make this type of self-serving unsubstantiated assertion to impugn the integrity of the jury's decision or to imply that the judge presiding over the trial was biased for not investigating based on the alleged juror comment.").  Notably, despite knowing of these alleged statements well in advance of the charges in the instant case, petitioner at no time raised any objection to Judge Joslyn's participation nor sought his recusal prior to sentencing.  Petitioner's affidavit is insufficient to establish that Judge Joslyn made these statements, and thus that he was biased against petitioner.[2]

That leaves Judge Joslyn's statement, made in an interview, that the reason for particular coverage of the Mahmoody divorce and custody proceedings over which he presided was based on the fact that "we do have a lot of Jews running the media."  The question before this Court on habeas review is not whether this comment was inappropriate coming from a judicial officer; it undoubtedly was.  Nor is the question whether this Court believes that such a comment warranted recusal of Judge Joslyn.  A federal habeas court has no such supervisory powers over state courts or state

---

[2]For the same reason, petitioner's unsubstantiated allegation that Judge Joslyn had some sort of financial relationship with the law firm representing petitioner does not establish bias.

prosecutors.  *See Murphy v. Florida*, 421 U.S. 794, 797 (1975).  Nor, moreover, is the question whether Judge Joslyn's statement created an appearance of bias against Jewish defendants in general or petitioner in particular.  As the Supreme Court has explained, most questions of recusal and disqualification are governed by rule or statute; the Due Process Clause "establishes a constitutional floor, not a uniform standard," and requires no more than a trial "before a judge with no *actual* bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904, 905 (emphasis added).  Thus, the refusal of a judge who has no actual bias to recuse himself on the basis of an appearance of bias does not violate any clearly established federal law.  *See Richardson v. Quarterman*, 537 F.3d 466, 478 (5th Cir. 2008) (citing cases); *Johnson v. Carroll*, 369 F.3d 253, 260 (3d Cir. 2004); *cf. Railey v. Webb*, 540 F.3d 383, 413 (6th Cir. 2008).  The only question before the Court under § 2254(d)(1) is whether the Michigan Court of Appeals's rejection of petitioner's bias claim is "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Woodall*, 134 S. Ct. 1697, ___, slip op. at 4 (Apr. 23, 2014) (quoting *Harrington*, 131 S. Ct. at 786-87).  The Court should conclude that petitioner cannot make this showing.

In analyzing a judicial bias claim, a court must presume that the trial judge "properly discharged [his] official duties."  *Bracy*, 520 U.S. at 909 (internal quotation omitted); *see also*, *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004) (Gadola, J.).  "The general presumption is that judges are honest, upright individuals and thus that they rise above biasing influences."  *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005).  The Michigan Court of Appeals could reasonably conclude that Judge Joslyn's statement in the documentary film did not in itself overcome this presumption.  Although inappropriate and based on a stereotype, the

13

statement itself does not exhibit animus against Jews in general or petitioner in particular.  In similar circumstances, courts have repeatedly found that judges were not required to recuse themselves, either under the Due Process Clause or under applicable recusal statutes.  For example, in *United States v. Nickl*, 427 F.3d 1286 (10th Cir. 2005), the court found that the defendant, a homosexual, was not denied a fair trial by the trial judge's comments analogizing homosexuality to illegal drug use and his referring to a male spectator as the defendant's wife.  While the comments were "insensitive or inappropriate," they did not "prejudge[]" the defendant or "constitute[] injudicious damnation of him," and did not "suggest 'such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Id.* at 1299 (quoting *Liteky*, 510 U.S. at 555).  In *Kinder v. Bowersox*, 272 F.3d 532 (8th Cir. 2001), the trial judge issued a press release announcing that he was switching his political party shortly before the petitioner's trial.  In this release, the judge criticized affirmative action, making statements suggesting that he viewed minorities as distinct from "hard-working taxpayers." *Id.* at 538-39.  The Eighth Circuit, although noting that "there is little point in defending the judge's press release to the extent it could be read to disparage minorities," *id.* at 541 (internal quotation omitted), concluded that habeas relief was not warranted because the Missouri Supreme Court did not act unreasonably when it found "no racial bias in the conduct of the underlying trial and found that the judge made no statement that could reasonably be perceived as a threat to ignore the law in favor of his own policy preferences." *Id.* at 540 (internal quotation omitted).  In *Montego v. Miller*, No. 95-3571, 1996 WL 694341 (7th Cir. Nov. 25, 1996), the trial judge made comments at sentencing disparaging of some Cuban immigrants in general.  The Seventh Circuit rejected the claim of the Cuban immigrant petitioner that these statements established bias on the part of the judge at sentencing, reasoning that the comments were "too vague to show that actual bias infected

Montego's sentence," that there was "no evidence that the sentencing judge favored the prosecution by imposing a sentence unsupported by the record," and that the petition did not "provide[] any evidence or point[] to any evidence in the record to show that actual bias influenced his sentence." *Id*. at *2.  In *State v. Dodd*, 944 S.W.2d 584 (Mo. Ct. App. 1997), the defendant claimed that the trial judge was biased against African-Americans because he used racial slurs and told racial jokes.  The defendant's claim was supported by the testimony of the judge's former bailiff, who testified that he had heard the judge tell racist jokes, off the bench, in an "offhand" manner, but had never seen him treat African-Americans differently from other parties.  *See id*. at 586.  The trial court (before a different judge), rejected this claim, and the Missouri Court of Appeals affirmed.  The Court reasoned that the record "support[ed] the motion court's finding that the trial judge did not demonstrate a general bias against African Americans nor a bias against defendant personally. . . . [T]he trial judge in defendant's case made no statement that could be perceived in any respect as a threat to ignore the law in favor of a personal bias or policy."  *Id*. at 587.

Similar results have been reached in civil cases decided under the federal recusal statute.  In *In re Chevron U.S.A., Inc.*, 121 F.3d 163 (5th Cir. 1997), the plaintiffs, residents of a predominately black subdivision in Houston, brought suit against a number of defendants, including Chevron, alleging mass torts resulting in personal injuries, wrongful death, and property damage.  The plaintiff's claims included "overtones or implications of alleged race discrimination."  *Id*. at 165. Chevron moved for the trial judge's disqualification based on several statements made by the judge, including comments that a scientific study Chevron planned to introduce "was of little or no value 'because white people wrote it,'" and an extensive "patently offensive comparison of ethnic differences."  *Id*. at 166 n.12.  Chevron sought mandamus relief in the court of appeals, which the

Fifth Circuit denied.   The court agreed that "the challenged statements and comments are unfortunate, grossly inappropriate, and deserving of close and careful scrutiny and most serious consideration." *Id*. at 166.  The court also concluded that the comments warranted recusal under the recusal statute because they reflected an appearance of bias.  *See id*. at 166-67 (applying 28 U.S.C. § 455(a)).  The court declined to grant mandamus relief, however, based in part on its conclusion that Chevron had failed to demonstrate actual bias.  As to actual bias, the court concluded that the judge's comments did not "demonstrat[e] that the district judge has a personal bias or prejudice for or against any party in the subject litigation," and did not demonstrate "that the judge has displayed a deep-seated favoritism toward the plaintiff, nor has he formed actual opinions based upon an extrajudicial source that disadvantages Chevron."   *Id*. at 166.   In *Phillips v. Joint Legislative Committee on Performance & Expenditure Review*, 637 F.2d 1014 (5th Cir. 1981), the plaintiffs brought employment discrimination actions against three state agencies, and sought recusal of the trial judge on the basis of stereotyped statements made by the judge in prior discrimination cases. The court of appeals found that the judge's comments did not require recusal.  The court reasoned that although the judge's comments "reflected racial reactions not only outmoded but improper" and were "unseemly," they were "not gratuitous insults and [did] not show overt hostility or the like," and reflected "nothing pertaining to the parties or subject matter of the [instant] case."  *Id*. at 1020, 1021.  The court further reasoned that accepting the plaintiff's argument would require the judge's recusal "for whole classes of cases," a requirement that should not be adopted "on such a grand scale on any but the most compelling showing."  *Id*. at 1021.  And in *Duplan Corp. v. Deering Milliken, Inc.*, 400 F. Supp. 497 (D.S.C. 1975), the court concluded that recusal was not warranted on the basis of statements that tended to "show a dislike for Europeans in general and the French in

16

particular," *id*. at 523, because the comments did not "indicate prejudice either for or against the moving party."  *Id*. at 524.

Here, as in these cases, Judge Joslyn's comment about there being "a lot of Jews running the media," while certainly inappropriate and based on outmoded and improper stereotypes, does not demonstrate overt hostility to Jewish defendants in general or petitioner in particular, does not suggest that the judge would ignore the law in favor of his own bias or policy preferences, and did not pertain to petitioner or any of the issues in petitioner's case.  Moreover, notwithstanding petitioner's allegations, "the record reveals that the judge was quite fair to Petitioner."  *McDaniel v. Brown*, No. 05-4817, 2006 WL 2331105, at *13 (D.N.J. Aug. 10, 2006).  Even though petitioner faced 13 criminal charges and a potential sentence of life imprisonment based on his status as a fourth habitual offender, Judge Joslyn was "certainly" not "opposed to" the plea agreement arranged by the parties, *see* Plea Tr., at 4, even though Judge Joslyn could have rejected the agreement.  *See* MICH. CT. R. 6.302(C)(3)(a).  Judge Joslyn sentenced petitioner in accordance with the plea agreement, including making recommendations to the Michigan Department of Corrections that petitioner be paroled to Oakland or Washtenaw County and that he be provided kosher meals in prison.  In light of the cases discussed above, the strong presumption that Judge Joslyn properly performed his official duties, and the absence of any indicia of bias on the record, it cannot be said that the Michigan Court of Appeals unreasonably applied clearly established federal law in rejecting petitioner's judicial bias claim.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Ineffective Assistance of Counsel*

Petitioner next claims that his trial counsel was ineffective in a number of respects.  The

17

Court should conclude that petitioner is not entitled to habeas relief on these claims.

1. *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

The Sixth Amendment right to counsel extends to the plea bargaining process, and thus "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent

counsel.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)) "'[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id*. (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *see also*, *Missouri v. Frye*, 132 U.S. 1399, 1406 (2012).   However, the *Strickland* standard is particularly rigorous in the plea bargaining context.   Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty . . . [in which] defense attorneys must make careful strategic choices in balancing opportunities and risks," "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011).   Further, to demonstrate prejudice as a result of counsel's performance with respect to the entry of a guilty plea, petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id*. at 743 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

2.   *Analysis*

a. *Failure to Investigate, Move for Forensic Evaluation, and Move to Suppress*

Petitioner contends that counsel failed to conduct a pre-trial investigation, move for a forensic evaluation, and move to suppress his confession to the police.   These claims are without merit.   As to counsel's investigation, petitioner merely asserts that counsel failed to conduct an adequate investigation; he does not suggest any exculpatory information counsel could have uncovered, nor does he provide any basis to conclude that the results of counsel's investigation could have affected his decision to plead guilty.   As noted above, "it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim." *Pierce*, 63 F.3d at 833.   Thus, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with

specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Petitioner also contends that counsel was ineffective for failing to move for a forensic psychiatric evaluation. Although there is evidence in the record that petitioner suffered from depression and was seeking psychological counseling, there is absolutely nothing in the record that suggests that petitioner was not competent to stand trial or enter his plea. petitioner has presented nothing to show either that counsel should have been aware of the need for a competency hearing, or that he was in fact incompetent to understand the nature of the proceedings and assist in his defense. Thus, petitioner has failed to show that counsel was ineffective for failing to request a competency examination. *See Kalasho v. Cason*, 77 Fed. Appx. 774, 776 (6th Cir. 2003) (counsel not ineffective where petitioner "appeared to have participated competently in his defense"); *Walker v. Gibson*, 228 F.3d 1217, 1231 (10th Cir. 2000) (counsel not ineffective where petitioner presented evidence that he suffered from mental disorder where nothing in the record showed that petitioner was unable to consult with counsel or understand the proceedings); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996) (counsel not ineffective where record showed that petitioner was able to assist in his defense); *Etoria v. Bennett*, 292 F. Supp. 2d 456, 472-73 (E.D.N.Y. 2003) (counsel not ineffective notwithstanding petitioner's mental illness where petitioner was able to understand the proceedings and assist in his defense, and nothing in the record showed that counsel should have been aware of petitioner's mental disorder).

Petitioner also contends that counsel was ineffective for failing to allow him to review the tapes of his confession to the police and failing to move to suppress his confession on the ground that his *Miranda* rights were violated. As a general matter, "there is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court

21

finds none." *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998). While petitioner did have a right to participate in the making of decisions fundamental to his defense, he has failed to show that "the actual access to the [tapes of his confession] was . . . fundamental to [his] defense." *Ramsden v. Warden, Dep't of Corrections*, No. 02-138-B-S, 2003 WL 356031, at *10 (D. Me. Feb. 14, 2003). More importantly, as with his other claims petitioner has failed to provide any evidence or point to anything in the record that shows his confession violated *Miranda*. Because petitioner has failed to show that his confession violated *Miranda*, he cannot show a reasonable probability that a motion to suppress would have been granted, and he therefore cannot show that counsel was ineffective. *See Strayhorn v. Booker*, 718 F. Supp. 2d 846, 871-72 (E.D. Mich. 2010) (Zatkoff, J., adopting Report and Recommendation of Komives, M.J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

### b. *Failure to Discuss Plea Offer*

Petitioner next contends that counsel failed to adequately discuss a prior plea offer with him. On November 2, 2010, counsel wrote a letter to petitioner indicating that the prosecutor was offering a plea deal whereby petitioner would be allowed to plead guilty, as a fourth habitual offender, to three counts of breaking and entering, with an 8-year cap on the minimum term of imprisonment. The plea cut-off date was November 8, 2010. Despite this short time frame, petitioner contends, counsel never visited him to discuss the plea deal. Petitioner states that he responded to this letter on the same date, but his attorney never came to see him. Even assuming that petitioner's account is accurate, petitioner cannot show that he was prejudiced by counsel's failure to properly communicate with him regarding this plea offer. It is true that petitioner ultimately pleaded guilty to four, rather than three, counts of breaking and entering. This fact, however, resulted in no

prejudice to petitioner. Petitioner was already subject to sentencing as a fourth habitual offender, the highest habitual offender level under state law. Because the sentences were concurrent, he suffered no additional punishment as a result of being convicted of four rather than three counts. And, significantly, petitioner actually received a greater benefit in pleading guilty to the four counts, as under the agreement to which he pleaded his minimum term was capped at seven years, rather than at 8 years as reflected in the earlier offer. *See Claxton v. United States*, No. 12-00433, 2013 WL 1136704, at *7 (D. Hawai'i Mar. 18, 2013) (counsel not ineffective for advising defendant to plead guilty to both counts of indictment without plea agreement rather than seeking dismissal of one of the counts where her sentence would have been the same regardless of whether she pleaded to one or both counts of the indictment); *United States v. Turner*, No. 3:09cr00018, 2012 WL 6649200, at *4 (W.D. Va. Dec. 20, 2012) (no prejudice from counsel's failure to communicate plea offer where defendant ultimately pleaded pursuant to agreement with lesser sentence than original offer); *Moore v. United States*, No. 00 Civ. 4560, 2001 WL 253432, at *12 (S.D.N.Y. Mar. 15, 2001) (rejecting ineffective assistance claim in part because "even if a ten to eleven year . . . offer was made to Moore, it would have been less beneficial to Moore than the 92 to 115 months deal pursuant to which Moore pleaded guilty."); *cf. Frye*, 132 S. Ct. at 1409 ("To establish prejudice in this instance [where counsel fails to communicate a plea offer], it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). Thus, even if counsel's performance in connection with the first plea offer was deficient, petitioner cannot show that he was prejudiced because he pleaded pursuant to a more favorable plea agreement. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  Failure to Move for Disqualification

Petitioner next contends that counsel was ineffective for failing to move for disqualification of the trial judge.  Because petitioner cannot show a reasonable probability that a motion to disqualify the trial judge would have been successful, he cannot establish prejudice.  As noted above, petitioner has not established that Judge Joyce was actually biased against him such that a motion to disqualify would have been granted on this basis.  Nor can petitioner show that a motion to disqualify under state law would have been successful, as Judge Joyce rejected petitioner's assertions of bias at sentencing.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Misadvice Regarding Sentence and Availability of No-Contest Plea

Petitioner next contends that counsel misadvised him regarding his sentence and the availability of a no-contest plea.  Petitioner contends that counsel initially advised him that he could secure a plea agreement with no jail time and in-patient mental health treatment, and that he could secure a no-contest plea.  Petitioner does not explain, however, how these initial representations prejudiced him or affected his decision to plead guilty.  Petitioner does not suggest that he did not understand the terms of the agreement to which he pleaded, or that counsel made any misrepresentations regarding that actual plea.  Petitioner's claim, essentially, is that counsel failed to secure a better plea deal in line with counsel's alleged initial discussions with petitioner.  This claim does not establish that counsel was ineffective or that petitioner was prejudiced.  "[C]ounsel's duty under the Constitution was to negotiate a reasonably favorable plea agreement, not the best one possible." *Abreu v. United States*, 925 F. Supp. 1404, 1411 (N.D. Ind. 1996); *cf. Marion v. United States*, No. 94-5180, 1994 WL 545441, at *2 (6th Cir. Oct. 5, 1994) (Defendant "appears to now

24

believe he might have gotten a better deal by pleading guilty to a different count. This is wholly insufficient to invalidate a plea agreement."). Here, although petitioner faced 13 felony counts with a potential sentence of life imprisonment based on his habitual offender status, counsel negotiated an agreement allowing petitioner to plead guilty to only four counts, with a sentence of 7-25 years, providing a substantial benefit to petitioner. Petitioner does not contend that he did not understand the terms of the agreement or that he did not knowingly and voluntarily enter his plea. In these circumstances, petitioner cannot show that he was in any way prejudiced by counsel's initial assessment that he could obtain a no-contest plea with no prison time. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Failure to Object to Sentencing Guidelines and Presentence Report

Petitioner finally contends that counsel was ineffective for failing to object to the sentencing guidelines and false information in the presentence report. In his habeas application, petitioner does not identify what portions of the guidelines scoring were objectionable, or what false information was contained in the presentence report. In his state court application for leave to appeal, petitioner argued that the trial court had erred in scoring Offense Variables (OV) 9, 12, and 16. Petitioner made the same arguments in his motion to withdraw his plea and for resentencing. In rejecting petitioner's claim, the trial court and court of appeals necessarily found that the offense variables were properly scored as a matter of state law. In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Thus, any objection to joinder of the

charges would have been meritless.  Because it is well established that counsel cannot be deemed

ineffective for failing to raise a meritless objection, *see Bradley v. Birkett*, 192 Fed. Appx. 468, 475

(6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d

922, 929 (5th Cir. 1993), petitioner is not entitled to habeas relief on this claim.

F.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides

that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this

language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S.

880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a

certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack

v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a

"substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial

showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason;

that a court could resolve the issues (in a different manner); or that the questions are adequate to

deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability with respect to his ineffective assistance of counsel claims.  Petitioner has identified no additional information counsel could have uncovered that would have affected his decision to plead guilty, nor any prejudice from counsel's alleged failure to discuss with him the first plea offer or from counsel's initial assessment of his ability to obtain a more favorable plea bargain.  Likewise, petitioner cannot

27

show that the sentencing guidelines were improperly scored.  Thus, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable.  The Court should, however, grant a certificate of appealability on petitioner's judicial bias claim.  Although I conclude that petitioner has failed to show that the trial judge was actually biased against him, this is a close question in light of the trial judge's comments made in a documentary film.  Thus, the question presented by petitioner's judicial bias claim is "adequate to deserve encouragement to proceed further."  *Barefoot*, 463 U.S. at 893 n.4.  Accordingly, the Court should grant a certificate of appealability with respect to petitioner's judicial bias claim.

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court grant a certificate of appealability with respect to petitioner's judicial bias claim, but deny a certificate of appealability with respect to petitioner's ineffective assistance of counsel claims.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the

2:13-cv-13253-DML-PJK   Doc # 11   Filed 05/21/14   Pg 29 of 29   Pg ID 369

objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 21, 2014                          s/Paul J. Komives
                                             PAUL J. KOMIVES
                                             UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the forgoing document was sent to parties of record on May 21, 2014, electronically, and/or by U.S. mail.

                                             s/Michael Williams
                                             Case Manager to the
                                             Honorable Paul J. Komives